**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, New York 10606*

June 17, 2026

**BY ECF/EMAIL**
The Honorable Vincent L. Briccetti
United States District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: ***United States v. Anand Singh*, S1 25 Cr. 227 (VB)**

Dear Judge Briccetti:

In December 2022, defendant Anand Singh, via a dating app and text message, communicated with an individual posing as a fourteen-year-old minor. During these communications, Singh repeatedly expressed his desire and intent to have sex with this minor and her friend. Singh did not limit himself to mere communication. He bought birth control for the minor and drove from New York to New Jersey to have sex with her at what he believed to be her mother's apartment. Upon arriving, Singh was intercepted by members of the public and fled. Law enforcement investigated Singh and found that this was not his only offense involving a minor. Around this same time, Singh had sex with a 17-year-old, who he also solicited to find younger companions, and of whom he possessed images of child pornography.

For his crimes, in February 2026, Singh pleaded guilty to: (1) traveling interstate to engage in sexual acts with a minor, in violation of 18 U.S.C. § 2423(b) and (2) possession of child pornography, in violation of 18 U.S.C. § 2252A. For the reasons below, the Government submits that the factors in Title 18, United States Code, Section 3553(a) strongly favor a sentence within the Guidelines range of 51 to 63 months' imprisonment to be followed by a five-year term of

supervised release. Such a sentence is necessary to reflect the nature and seriousness of the offenses, to protect the public from the defendant, and to afford adequate deterrence.

## I. Factual Background

Travel to New Jersey to Engage in Sex Acts with a Minor

The night of December 12, 2022, the defendant and an individual posing as a fourteen-year-old minor began communicating via an online dating application. Presentence Investigation Report ("PSR") ¶ 11. The defendant's profile on the dating app contained multiple pictures of himself, a fake name—"Anon"—and stated his age (33 years old). *Id.* The defendant reached out to the purported minor, who initially indicated that she was 20 years old, and asked her, "So you like older guys huh?" After some back-and-forth, the purported minor asked the defendant "u like younger girls?" to which he replied, "I dooooo" and "young girls usually rock my world." *Id.* ¶ 12. At that point, the purported minor said she was younger than she listed on the dating app, to which the defendant responded, "As long as your 18 were good." *Id.* When the purported minor responded that she was only fourteen, the defendant said, "that's too young"—but immediately followed with "I bet you're fuckin fun to be with" and "Holy shit you must be tight." *Id.*

The rest of the night and into the early morning hours of December 13, 2022, the defendant continued to message the purported minor, including by asking for "full body pics" after receiving clothed photographs of her face and upper body. *Id.* During this exchange, the defendant discussed making plans to get a "motel" in New Jersey with the purported minor, telling her "I bet you'd wrap around my cock like a glove." The defendant then masturbated while repeatedly asking the purported minor to watch on a video call, which she refused. *Id.* After that, the defendant said the purported minor was "too young" and temporarily broke the conversation. *Id.*

In the evening on December 13, 2022, the defendant reengaged with the purported minor. *Id.* ¶ 13. The defendant said, "I'm prob not making it over tonight" and that he was "thinking" about the purported minor a lot, including about how "tight [she is]." *Id.* When the purported minor asked why he was not coming to see her, the defendant said he was "not trying to go to jail lmao"— immediately followed by "[w]hat's the biggest dick you've taken?"

The defendant and the purported minor continued texting for the next two days and arranged to meet at the purported minor's apartment, while her mother was at work. *Id.* Among other messages, the defendant repeatedly asked the purported minor about her sex life and her body, and stated what he wanted to do with her sexually, including but not limited to:

- "I can't wait to suck on your little perky tits"
- "I'm planning on putting as many loads in you as possible"
- "I can't wait to be inside of you."
- "No condoms I need to breed that tight little teen pussy"

*Id.* The defendant also took steps to avoid getting caught. He asked the purported minor what times her mom left and came back from work and promised to bring sex toys and Plan B birth control. *Id.* The defendant also asked the purported minor if she had any friends that "like older guys" and when the purported minor said she had one friend who did, he asked if the purported minor "ever had a threesome," calling the purported minor and her friend "cum dumpsters." *Id.*

Before meeting up with the purported minor, the defendant—as he said he would—purchased Plan B birth control from a drugstore. At approximately 5:30 p.m. on December 16, 2022, the defendant texted the purported minor that he was meeting a friend in Connecticut after work, but would come to New Jersey afterwards and would arrive at her mom's apartment "closer to 10." *Id.* ¶ 14. The defendant then in fact traveled from New York to Connecticut and once he

left Connecticut, updated the purported minor that he was on the way to see her and that he "can't wait to break [her] in" and "cum in [her]." When the defendant arrived at apartment building that he believed to be where the purported minor lived with her mom, he parked his car and went inside. *Id.* While he was waiting for the elevator in the lobby of the apartment building, he was approached by a group of civilians, who berated him briefly about meeting up with a minor before the defendant fled. *Id.*

<u>The Defendant's Possession of Child Pornography</u>

Law enforcement learned of the defendant's conduct described above and conducted an independent investigation, including but not limited to interviews and the review of evidence collected pursuant to legal process, including a warrant served on the dating application.

In the course of this investigation, law enforcement learned that in approximately 2022 and 2023, the defendant had sex one or two times with a seventeen-year-old girl[1] (the "Victim"), who he met on a dating application in November 2022. *Id.* ¶ 15. In the course of their interactions and communications, the Victim sent the defendant images of her naked body, which the defendant continued to possess after learning from the Victim that she was a minor. *Id.* As he did during the interactions with the purported minor described above, the defendant asked the Victim if she had any younger friends with whom they could have a threesome. *Id.*

## II. Procedural History and Guidelines Calculation

On May 1, 2023, the defendant was charged by complaint with one count of attempted enticement of a minor, in violation of 18 U.S.C § 2422(b). The defendant was presented and released on bail. On May 19, 2025, the defendant was indicted for the same crime. On February

[1] The Victim listed her age as eighteen on the dating application.

5, 2026, the defendant pleaded guilty to traveling with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), pursuant to a plea agreement, and was remanded into custody.

The plea agreement between the Government and the defendant calculates the sentencing range under the United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") as 51 to 63 months' imprisonment. In the PSR, the Probation Office calculates the same Guidelines range and recommends a sentence of 24 months' imprisonment. *Id.* ¶ 106 & 26.

## III. Discussion

### 1. Applicable Law

As the Court knows, the Sentencing Guidelines, while no longer mandatory, still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), courts must treat them as the "starting point and the initial benchmark" for sentencing proceedings, *id.* at 49.

After calculating the Guidelines range, the Court must consider the factors outlined in Title 18, United States Code, Section 3553(a), which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall v. United States*, 552 U.S. 32, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**2. The Court Should Impose A Guidelines Sentence**

A sentence within the Guidelines range of 51 to 63 months' imprisonment, followed by a five-year term of supervised release, is sufficient but not greater than necessary to comply with the purposes of sentencing under Section 3553(a). The requested sentence is necessary given the nature of the offenses, which includes repeated attempts to have sex with minors, to protect the public from a sexual predator, and to deter both the public the defendant from engaging in similar misconduct. These considerations strongly favor a Guidelines sentence.

The defendant's conduct is incredibly serious. With respect to Count One, the defendant repeatedly sent explicit communications to a person he believed to be a fourteen-year-old girl over multiple days, culminating in his showing up at what he believed to be this purported minor's apartment to have sex with her and a friend while he thought her parent was at work. The defendant did this despite recognizing that he could go to "jail." And he took steps to conceal his crime, including going to a drugstore to purchase Plan B birth control. At every turn, the defendant could have made a different choice—he could have stopped the chats, decided not to drive to New Jersey,

or remained in his car when he got to the purported minor's building. Each of these steps reflected a conscious decision by the defendant to continue his plan to have sex with (and potentially impregnate) a minor. This extended course of conduct by a defendant who recognized the illegality of his behavior demonstrates the seriousness of the offense and the need to protect the public from his further crimes.

Equally troubling, this was not the defendant's only offense involving a minor. As reflected in Count Two, the defendant possessed child pornography generated by a seventeen-year-old whom the defendant met on a dating application and met for sex. To be sure, when the defendant communicated with this Victim and met her for sex he believed that she was eighteen. But the defendant later learned that she was a minor, but nevertheless kept the naked images he had obtained of her in his possession. This conduct is serious, particularly when viewed in tandem with the defendant's behavior described above involving what he believed was a fourteen-year-old child. It is made even worse because, only a month after initially meeting the Victim, the defendant continued to seek out young women on a dating app—which was the catalyst for his attempting to meet the purported minor in New Jersey, as set forth above.

Importantly, the conduct charged in Counts One and Two are more than one-time lapses in judgment. The defendant engaged in a pattern of seeking out young girls, as reflected in the excitement he expressed to the purported minor when he learned that she was only fourteen years old. This kind of conduct—seeking out young children for sex—threatens an especially vulnerable segment of our society. A Guidelines sentence is necessary to reinforce the vital protections embodied in these laws, promote respect for the law, and deter similar criminal conduct by others.

### 3. A Downward Variance is Not Warranted

None of the mitigation materials—the defendant's break up that allegedly precipitated the charged conduct, the abuse he experienced as a child, or his therapeutic efforts while on release—justify a downward variance, and certainly not the significant variance sought here. *See* Deft. Sentencing Memorandum ("Deft. Mem.") at 5-6, 10; Deft. Mem. Exs. B, C, and D.[2]

For example, the psychosexual evaluation, attached to the Deft. Mem. as Exhibit B, concluded that the defendant is "not likely to pose a threat to the safety of others at this time." Deft. Mem., Ex. B at 10. But this report does not include any indication that the conduct charged in Count Two, which involved actual sex with a minor and the attempt to recruit other young women, was considered in reaching this conclusion. Moreover, the report states that "there are no . . . indications [the defendant] currently evidences a preferential sexual attraction to minors" (Deft. Mem., Ex. B at 9). But this report is hard to square with the defendant's own words when chatting with a purported fourteen-year-old, including that he wanted to "breed" a "tight teen pussy." In any event, the need for incapacitation is just one of multiple factors this Court is required to consider when fashioning an appropriate sentence.[3] And while the defendant's mitigation

[2] The Probation Office also recommends a downward variance but nevertheless concludes that a term of imprisonment (24 months) is appropriate. *See* PSR at 27-29.

[3] Exhibit F to the Deft. Mem. is an affidavit of an individual who previously worked at the Bureau of Prisons and who concludes that the defendant will be "vulnerable in a secure federal prison due to his offense and lack of prior state or federal prison experiences" and that he "meets the profile of a white-collar offender.["] Deft. Mem, Ex. F at 2. This affidavit is unpersuasive. As an initial matter, there is no dispute that the defendant is not a "white-collar offender" and in any event, his lack of "prior federal prison experience" does not warrant special treatment. *Id.* at 7. Many defendants appearing before this Court have no prior federal prison experience and nonetheless receive substantial custodial sentences that appropriately reflect the factors set forth in 18 U.S.C. § 3553(a). Nor does the possibility that the defendant may face challenges or vulnerabilities while incarcerated justify a non-custodial sentence. Such concerns are not unique to this defendant and do not outweigh the seriousness of the offense, the need for just punishment, deterrence, and the

materials may potentially favor a sentence towards the low end of the Guidelines range, they do not justify a below-Guidelines sentence. Indeed, the Government considered these and other mitigative factors in offering the defendant a plea to the charges in the Superseding Information, while the attempted enticement charge in the Indictment would have carried with it a ten-year mandatory minimum.

## IV. Conclusion

In light of the severity of the offense conduct, which involves not one but two instances of the defendant engaging in sex crimes involving a minor, a Guidelines sentence is sufficient but not greater than necessary to achieve the legitimate purposes of sentencing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: *_/s/ Kathryn Wheelock_*
Kathryn Wheelock
Assistant United States Attorney
Southern District of New York
(212) 637-2415

---

other statutory sentencing considerations. To the extent the defendant raises legitimate concerns regarding institutional placement or safety, those issues are appropriately addressed through the Bureau of Prisons' designation and classification process, not by eliminating an otherwise warranted term of imprisonment.